UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KENTON MAKOWSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00181-TWP-DML |
| ) | |
| CITY OF JEFFERSONVILLE, INDIANA, and ) | |
| JEFFERSONVILLE POLICE DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants City of Jeffersonville, Indiana ("Jeffersonville") and Jeffersonville Police Department ("JPD") (collectively, "Defendants") (Filing No. 12). Plaintiff Kenton Makowsky ("Makowsky"), a former JPD law enforcement officer, initiated this action against the Defendants alleging wrongful termination, defamation, and violation of his First Amendment speech rights under 42 U.S.C. §1983 after he was "forced to resign." (Filing No. 10 at 1, 2, 5, 6–8.) For the following reasons, the Court **grants in part and denies in part** Defendants' Motion to Dismiss.

## I. BACKGROUND

Makowsky began employment as a law enforcement officer for JPD in early 2007 (Filing No. 10 at 1). Throughout service as a JPD officer, he met and exceeded all expectations and, in fact, served as a team leader on the JPD Special Weapons and Tactics ("SWAT") team beginning in 2014. *Id.* In June 2017, Makowsky resigned his SWAT role and began serving as a patrol officer; however, he applied to re-join the tactical squad in November 2017. *Id.* at 2. On January 9, 2018, the SWAT team convened to discuss applications for an open position. *Id.* At the

meeting, Officer Justin Salisbury ("Salisbury") made "derogatory remarks" about Makowsky's wife. *Id.* Makowsky heard about the comments and confirmed the with another officer over the telephone on January 10, 2018 that the remarks were made. *Id.* As soon as he hung up, Makowsky called a different officer and said something to the effect of "if Salisbury has an issue with me[,] we can address it man-to-man". *Id.* These conversations occurred between 7:30 p.m. and 8:00 p.m., a time when both officers were off duty. *Id.*

The next day, on January 11, 2018, Makowsky filed a complaint with Jeffersonville's Human Resources department, alleging that he was a victim of a hostile work environment. *Id.* at 3. The following day, Makowsky, the Fraternal Order of Police ("FOP") president, and JPD Chief Kenny Kavanaugh ("Kavanaugh") met to discuss the incident at Kavanaugh's request. *Id.* Though Makowsky confirmed that he and Salisbury had no on-going hostility or risk of physical confrontation to Kavanaugh, the meeting concluded with Makowsky receiving a verbal counseling. *Id.* In fact, the meeting was characterized as "the conclusion of disciplinary action against Makowsky for his statements on January 10, 2018." *Id.* A few days later, on January 12, 2018, Makowsky and Salisbury—consistent with the assurance Makowsky made to Kavanaugh—worked a night shift together without incident. *Id.*

On February 19, 2019, Makowsky was notified that the Defendants had re-opened the disciplinary action. *Id.* A few months after that, on April 10, 2018, Kavanaugh informed Makowsky that he would not receive a promotion because of a HR complaint. *Id.* Approximately one week later, on April 16, 2018, JPD issued Makowsky a written reprimand for his January 10, 2018 statement, concluding that his comment violated department policies and procedures. *Id.* That same day, Kavanaugh wrote to Makowsky to inform him that he was being placed on paid administrative relief effective April 19, 2018, because of an alleged incident on March 26, 2018,

2

where Makowsky "initiated unwanted communications about a co-worker." *Id.*; Filing No. 10-2 at 1. This incident, however, did not involve Makowsky himself, but rather involved allegations that Makowsky's "wife had made communications that made another officer uncomfortable." (Filing No. 10 at 4.)

On or about April 28, 2018, Makowsky filed a grievance with the FOP, which served as "the labor union responsible for the collective bargaining agreement between the Defendants and the law enforcement officers employed by the Defendants." *Id.* On May 6, 2018, the attorney for the JPD Merit Board wrote to Makowsky to rescind the written summary discipline from April 16, 2018 but indicated that the restrictions remained in place. *Id.* On May 9, 2018, Makowsky received "a written notice of the preferment of charges" against him before the JPD Merit Board concerning his January 10. 2018 comment. *Id.* The next day, Makowsky requested a hearing before the JPD Merit Board. *Id.*

At some point between May 9 and May 12, 2018, fellow JPD Officer Josh Juliot ("Juliot")—who had been present during the SWAT team meeting on January 9, 2018—entered a private business where Makowsky was working as security and asked Makowsky about the status of his disciplinary proceedings. (Filing No. 10 at 5.) Makowsky told Juliot that a disciplinary hearing would occur and urged him to testify truthfully about the meeting if called to testify. *Id.* On June 19, 2018, Makowsky received correspondence from Kavanaugh alleging that Makowsky had violated his disciplinary restrictions by initiating contact with other JPD officers. *Id.* On June 30, 2018, Makowsky was served with a "Complaint for Discipline" that requested he be terminated from JPD. *Id.* Approximately two weeks later, on July 13, 2018, Makowsky resigned his position to avoid being involuntarily discharged. *Id.* Makowsky later provided a Notice of Tort Claim and sued Defendants. *Id.*

After the Court granted Defendants' Motion for a More Definite Statement (*see* Filing No. 9), Makowsky filed a First Amended Complaint on February 2, 2021. He attached seven exhibits to the Amended Complaint, all of which are incorporated by reference (*see* Filing No. 10 at 3–5). Defendants then moved to dismiss the Complaint on February 12, 2021 (Filing No. 12).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. But courts need not "accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that

4

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

And when resolving a motion to dismiss under Rule 12(B)(6),

a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).

### III. DISCUSSION

Makowsky brings three claims in his Amended Complaint—Count I: Wrongful Termination; Count II: Defamation; and Count III: Civil Rights Violation (of his First Amendment speech rights. (Filing No. 10 at 6–8.) Defendants maintain in their Motion to Dismiss that all claims should be dismissed, and the Court discusses each claim below. First, however, the Court will resolve Defendants' unopposed contention that JPD "is not a suable entity." (Filing No. 13 at 18.) Makowsky did not dispute this argument. Apparently, he accepts that the "Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D. Ind. 2010) (emphasis omitted)). Because JPD is not a suable entity, the Court **grants** Defendants' Motion to Dismiss as to all claims against JPD. Now to the individual claims.

### A. Wrongful Termination

Makowsky's First Amended Complaint alleges in Count I that Defendants "constructively terminated [him] in retaliation for his having filed a complaint and a grievance regarding the

5

Defendants' violations of their employment policies." (Filing No. 10 at 6.) But under Indiana law, "the only avenue of relief available to a police officer who voluntarily resigns is re-application." *Guzik v. Town of St. John*, 875 N.E.2d 258, 269 (Ind. Ct. App. 2007) (summarizing holding of *Kimbrell v. City of Lafayette*, 454 N.E.2d 73, 75 (Ind. Ct. App. 1983)). Though Makowsky points to an Indiana Court of Appeals opinion recognizing a constructive discharge claim after an employee resigned, (*see* Filing No. 16 at 6–8 (citing *Tony v. Elkhart Cty.*, 851 N.E.2d 1032 (Ind. Ct. App. 2006))), that case concerned a limited, non-applicable exception to Indiana's strong presumption of at-will employment, *see Tony*, 851 N.E.2d at 1040 (holding "that a constructive discharge in retaliation *for filing a worker's compensation claim* falls within the [ ] public policy exception and that a cause of action for constructive retaliatory discharge exists for an employee that can show that he has been forced to resign as a result of *exercising this statutorily conferred right*") (emphases added). Accordingly, because Makowsky resigned his position—and has not argued that he was exercising a clear statutory right or obeying a legal duty, *see Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231, 1235 (Ind. 2020) (explaining that "the public policy exception [to the presumption of at-will employment] protects from termination an employee exercising a clear statutory right or obeying a legal duty")—his wrongful termination claim must fail. Therefore, the Court **grants** Defendants' Motion to Dismiss on this claim as pled in Count II of Makowsky's First Amended Complaint.

B.    **Defamation**

Makowsky's First Amended Complaint alleges in Count II that Defendants, "through their employees and/or agents, including, but not limited to, JPD Chief Kavanaugh, have knowingly and intentionally provided false and misleading information regarding Makowsky's employment with the Defendants, Jeffersonville and JPD, with the intent to prevent Makowsky from obtaining employment". (Filing No. 10 at 6–7.) Specifically, Makowsky pleads that Defendants "falsely

6

told the Harrison County Sheriff's Department that Makowsky had slept with a fellow officer's wife" and that he "had violated the JPD communications policy." *Id.* at 7.  To establish a claim of defamation under Indiana law, a "'plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages.'" *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (quoting *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006)).  Moreover, defamation *per se* "arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Id.*

Defendants argue that while Makowsky, after amending his Complaint, "has included additional information regarding the content of these Defendants' allegedly defamatory statements," his allegations remain "inadequate because he has once again failed to properly plead" their context. (Filing No. 13 at 17.)  Specifically, the "First Amended Complaint fails to identify any individual(s) who allegedly made these statements, instead stating generically that 'the Defendants' made the statements." *Id.* (quoting Filing No. 1 at 7).  Moreover, Makowsky "does not contextualize these statements in time or place, indicating only that the statements were made to 'the Harrison County Sheriff's Department,' not any particular person or persons." *Id.*  Therefore, the defamation claim must fail, urge Defendants, because Makowsky has not pled "'the number of speakers or statements made, to whom the statements were made, or when and in what context the statements were made.'" *Id.* at 16, 17 (quoting *Britt Interactive LLC v. A3 Media LLC*, No. 116CV02884TWPDML, 2017 WL 2118513, at *5 (S.D. Ind. May 16, 2017)).

Makowsky responds that the statements made "on behalf of the Defendants are defamatory *per se* in that they falsely accuse Makowsky of both misconduct in Makowsky's trade, profession,

7

office or occupation and of sexual misconduct." (Filing No. 16 at 8–9 (citing *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. App. 2004).) Though Defendants maintain that he has failed to identify the speaker of the alleged comments, Makowsky retorts that he specifically identified "Kavanaugh to be a person, although perhaps not the only person, who, acting as an agent of the Defendants, made the defamatory statements to Makowsky's potential employers." *Id.* at 9. Moreover, and again contrary to Defendants' contention, Makowsky argues that he identified "the recipients of these defamatory statements, specifically representatives of the Harrison County Sheriff's Department." *Id.* Requiring more specificity in identifying the speaker (or speakers) and recipient (or recipients) in this context "is neither reasonable nor is it a requirement imposed by Indiana law." *Id.* As for timing of the statements, the "First Amended Complaint makes clear that such statements took place in the time following Makowsky's constructive discharge from his employment with the Defendants." *Id.* at 10. Makowsky contends that because he was not a party to the communications, "[h]e cannot reasonably be expected to provide the timing of such communication with the precision demanded by the Defendants." *Id.*

Defendants reply that although Makowsky claims he has sufficiently pled a claim by "identif[ying] at least one speaker, and a class of recipients," the Indiana Court of Appeals has held that a similarly broad "allegation was insufficient to state a claim." (Filing No. 19 at 11 (citing *Newman v. Jewish Community Center of Assn of Indianapolis*, 875 N.E.2d 729 (Ind. Ct. App. 2007)).) The *Newman* panel, Defendants recount, held a defamation claim too vague when the plaintiff

> [g]enerally allege[d] that the [defendant organization], some or all of its employee Defendants herein, and Unknown Employees of [defendant organization] defamatorily communicated to the public that [plaintiff] had filed a false child abuse report, a matter which became common knowledge among [defendant organization] staff and parents of the students in the [defendant organization] aftercare program, where hundreds of students are enrolled.

8

*Id.* (citing *Newman*, 875 N.E.2d at 735). Like in *Newman*, Defendants urge, Makowsky's First Amended Complaint falls short of stating "'who made each allegedly defamatory statement, what it is they said or wrote, and where or to whom the statements were made.'" *Id.* (quoting *Memory v. Kelley*, 2018 WL 2266421 at *4 (S.D. Ind. May 17, 2018). Instead, it "provides only vague references to unnamed employees of the Jeffersonville Police Department who allegedly defamed [Makowsky]." *Id.* at 12. Though Makowsky argues that his claim is sufficiently specific because he named "Kavanaugh as a speaker of the allegedly defamatory statements," Defendants argue that "he has failed to connect [him] to any particular statement," and has instead merely stated "that 'he knowingly and intentionally provided false and misleading information.'" *Id.* at 12–13 (quoting Filing No. 10 at 6–7).

The Court agrees with Makowsky: he has now pled a sufficient claim for defamation. While Defendants attempt to draw this case near *Newman*, which involved named and unnamed employees of a defendant organization to whom a plaintiff had "not attribute[d] alleged defamatory statements", Makowsky's First Amended Complaint specifically names Kavanaugh as a speaker of detailed comments. Though Makowsky first pleads generally that Kavanaugh "knowingly and intentionally provided false and misleading information" about his employment, a few paragraphs later he specifies that these statements had declared "that Makowsky had slept with a fellow officer's wife" and that he "had violated the JPD communications policy." (Filing No. 10 at 6–7.) This pleading satisfies the public policy animating this specificity requirement – that the absence of this precision

> works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.

9

*Trail v. Boys & Girls Clubs of Nw. Indiana*, 845 N.E.2d 130, 137 (Ind. 2006) (citation omitted).

Because Makowsky's First Amended Complaint sufficiently pled a *per se* defamation claim, by detailing the statements by Kavanaugh (and perhaps others) involving charges of misconduct in Makowsky's trade, profession, office, or occupation as well as sexual misconduct, the Court **denies** Defendants' Motion to Dismiss concerning Count II of Makowsky's First Amended Complaint.

C.  **First Amendment**

In Count III, Makowsky alleges that "Defendants' disciplinary actions and termination of Makowsky's employment as a reprisal for Makowsky's speech constitute actions under color of state law to deprive Makowsky" of his rights secured by the First Amendment (Filing No. 10 at 7–8).[1] To state a First Amendment retaliation claim like Makowsky's, a public employee must establish three elements: (1) that he "engaged in constitutionally protected speech," (2) that he "suffered a deprivation likely to deter protected speech," and (3) that his "protected speech was a motivating factor in the deprivation and ultimately, if the public employer cannot show it would have inflicted the deprivation anyway, its but-for cause." *Harnishfeger v. United States*, 943 F.3d 1105, 1112–13 (7th Cir. 2019).

Defendants argue that Makowsky's claim fails on the first prong: "his speech was not entitled to First Amendment protections." (Filing No. 13 at 9.) Defendants argue that the speech did not address a matter of public concern, which is evaluated by examining the "'content, form, and context of a given statement.'" *Id.* at 10 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48

---

[1] The First Amended Complaint also alleges that Makowsky's "right to freedom of speech and expression" was protected by the Constitution of "the State of Indiana." (Filing No. 10 at 7.) But because Makowsky's response brief solely discussed the First Amendment, his state constitutional claim is deemed abandoned. *Cf. Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) ("[B]ecause Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned.").

(1982). They maintain that Makowsky's speech represents the "quintessential example of a public employee speaking on a purely private matter." *Id.* at 12. The statement "concerned an interpersonal workplace dispute with a fellow officer," merely "involving a desire to settle a score . . . through a physical altercation." *Id.* at 10–11. Defendants point out that the comment was made only after Makowsky found out that Salisbury "had allegedly impugned his wife at a Department meeting with other officers present." *Id.* at 11. And the statement was "limited to verbal communications between fellow officers" and Makowsky "did not publish [it] in a public forum." *Id.* In any event, Makowsky conceded in his First Amended Complaint "that his statements 'do not touch upon an issue of public concern.'" *Id.* (quoting [Filing No. 10 at 7](#)).

Makowsky responds that precedent does not demand that speech concern "a matter of public concern" to receive protection under the First Amendment. ([Filing No. 16 at 3](#).) Instead, under "the clear, albeit nuanced," language contained in Supreme Court cases, when "private, personal speech takes place, and a governmental employer, with no legitimate interest in regulating such speech, takes punitive action thereupon, the question of whether the speech itself touches upon a matter of public concern is not relevant." *Id.* at 3–4 (citing *Connick*, 461 U.S. at 157) (Brennan, J., dissenting)). To Makowsky, "for a governmental employer to have any cognizable interest in policing the speech of its employees, that speech must have some capacity to harm or disturb the pursuit of the governmental agency's function." *Id.* at 4. That is not the case here, Makowsky contends, when "[t]he speech did not take place at Makowsky's workplace, or during Makowsky's working hours, and did not relate to or impact Makowsky's function as an employee of the Defendants." *Id.* at 5. Indeed, Makowsky argues he "is entitled to feel and express frustration and consternation that an acquaintance of his, whom he happens to know through his employment, has spoken disparagingly of his spouse." *Id.* Though "this communication was with

11

and regarding individuals with whom Makowsky works," Makowsky maintains that it touched on "a matter intimately intertwined with Makowsky's private life." *Id.* All told, Makowsky concludes, "Defendants may be free to limit Makowsky's speech on personal matters when he is at work, but are not free to impose those limitations upon Makowsky when he is functioning as a private citizen, discussing a matter of purely personal interest." *Id.* at 6 (citing *McAuliffe v. New Bedford*, 29 N.E. 517 (Mass. 1892) (Holmes, J.)).

Defendants reply that "speech that occurs outside of the workplace may nevertheless be regulated by a governmental employer where the governmental employer has 'legitimate and substantial interest[s]' which are 'compromised by [the] speech.'" (Filing No. 19 at 4 (quoting *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 81 (2004); *see also U.S. v. National Treasury Employees Union*, 513 U.S. 454 (1995)). Defendants contend the "'key issues'" of this analysis—all of which are essential—are "'whether the employee's speech is made outside the workplace; involves content largely unrelated to her governmental employment; and is addressed to a public audience, or what amounts to the same thing, involves any matter for which there is potentially a public.'" *Id.* at 5 (quoting *Harnishfeger*, 943 F.3d at 1113). Here, although the speech "purportedly occurr[ed] outside the workplace, [it] was closely related to [Makowsky's] governmental employment and the government had a legitimate and substantial interest in disciplining him for the speech." *Id.* First, "[t]he speech was in response to another officer's alleged on-the-job statements about the effect of [Makowsky's] marital relationship on his work performance." *Id.* This, Defendants argue, was "closely tied to" Makowsky's governmental employment. *Id.* at 5–6. And perhaps most importantly, "[a] governmental employer has a significant interest in preventing employees from threatening and physically fighting one another." *Id.* at 6. To argue "that a police department can do nothing to prevent such speech" is "facially absurd." *Id.* At any rate, Makowsky

12

concedes one of the necessary elements is lacking because his speech "was not addressed to a public audience." *Id.* at 5, 6.

The Defendants' argument is persuasive and Makowsky's First Amendment claim must fail. For governmental employee speech to avoid the *Connick* "public concern" inquiry, it must be "completely divorced from the employment context." *Bonds v. Milwaukee Cty.*, 207 F.3d 969, 976 (7th Cir. 2000) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Keyishian v. Board of Regents*, 385 U.S. 589, 605–06 (1967)). Makowsky's invitation to address the quarrel "man-to-man" was directly tied to a co-worker's statement of concern about the impact Makowsky's spouse had on his work abilities. This statement is inexorably wedded to Makowsky's employment as a JPD officer, and it is farcical to suggest that a police department has no power to regulate such threats among members of its force. And the "content, form, and context of" Makowsky's statement show that it did not address a matter of public concern. *See Connick*, 461 U.S. at 147–48. The comment's content concerned settling an interpersonal tiff between co-workers. It was said over the telephone to another officer and was not intended for wide, community broadcast. And it was made after an officer in a private meeting expressed apprehension over Makowsky's work abilities because of his wife's character and conduct. Evaluation of these three factors shows that Makowsky's statement was made "simply to further a purely personalized grievance" and "does not involve a matter of public concern." *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013). And, even without examining these factors, Makowsky dispositively acknowledged in his First Amended Complaint that his statements "do not touch upon an issue of public concern." (Filing No. 10 at 7.) For these reasons, the Court **grants** Defendants' Motion to Dismiss as to Makowsky's First Amendment claim alleged in Count III of Makowsky's First Amended Complaint.

13

## IV.     CONCLUSION

For the reasons explained above, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss (Filing No. 10). **Dismissal with prejudice is granted** with respect to all claims against JPD and the **Clerk is directed to terminate** Jeffersonville Police Department as a defendant in this action. As to the remaining Defendant, City of Jeffersonville, Indiana, **dismissal with prejudice is granted** with respect to Makowsky's wrongful termination claim (Count I) and civil rights (First Amendment) violation claim (Count III).[2] **Dismissal is denied** as to Makowsky's claim for defamation (Count II), and this claim remains pending for trial. The parties shall contact the Magistrate Judge concerning a case management plan.

**SO ORDERED.**

Date:  4/19/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Matthew J. Schad
SCHAD & SCHAD
mschad@schadlaw.com

Mickey Kevin Weber
WEBER & WEBER
mkw@weberlegal.com

Christopher Nicolas Jacovitch
SCHILLER BARNES MALONEY PLLC
cjacovitcch@sbmkylaw.com

Justin M. Schaefer
SCHILLER BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

---

[2] "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.  Leave to amend need not be granted, however, if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citations omitted).